DAMORA v. CRAIG et al.[1]

*(District Court, E. D. Pennsylvania.   November 10, 1891.)*

1. CHARTERERS' AGENTS—LIABILITY FOR FREIGHT.
   Brokers who have no connection with a cargo, except as brokers to sell same, collect the amounts due, and pay the freight, are not personally liable for the freight.

2. DUTY OF MASTER—COLLECTION OF FREIGHT.
   It is the duty of a master who has signed, under the provision of a charter, bills of lading, the freight on which amounted to a greater amount than the charter freight, to accept the freight due under the charter-party, when tendered, and to authorize the agents of the charterer to collect the freight on the bills of lading.

In Admiralty.

Libel by Baldasare Damora, master of the bark Cuomo Primo, against John F. Craig and James Craig, trading as John F. Craig & Co.   The vessel was chartered to proceed to St. Johns Antigua, and take in a cargo of sugar; the vessel to be consigned to charterers' agents at port of discharge, and, being loaded, to proceed to Delaware breakwater for orders. Master to sign bills of lading at any rate of freight required without prejudice to this charter, but at not less rates than certain rates mentioned.   The vessel arrived at the Breakwater, and received orders from Watson & Farr, the charterers' agents, to Philadelphia.   The respondents, John F. Craig & Co., effected a sale of the whole cargo, as sugar brokers, to Spreckels & Co., by order of said Watson & Farr, and of the other consignees; and, as agents, paid to the master's agent $1,000 on account of charter freight, which, with advances made to the master at Antigua, including insurance, left a balance due under the charter of $298.87, for which a bill was presented by the master's agent.   Respondents were directed to pay the amount of charter freight appearing by this bill, requesting the master to authorize Watson & Farr to collect the bill of lading freights, which belonged to the charterers.   The captain refused to do so.   Watson & Farr found that consignees of the rest of the cargo were willing to settle the bill of lading freights with them without such authorization, and directed respondents to pay the balance of the freight as per bill rendered, which said master's agent refused to accept, and this suit was brought for the full amount of the bill of lading freight.   Respondents stated that they were authorized and directed by Messrs. Watson & Farr to tender the charter freight due to the vessel.

*John Q. Lane,* for libelant.

*Morton P. Henry,* for respondents.

BUTLER, J.   It seems quite clear that the respondents are not liable. The cargo was shipped under a charter, between the vessel and Bennett & Co.   Watson & Farr, were the latter's agents; they assumed charge of the cargo on its arrival at the Delaware breakwater, and ordered its delivery to Mr. Spreckels, at Philadelphia, to whom the respondents

_____
[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

had sold it, as brokers for Watson & Farr. The respondents had no connection with it except as such brokers. Watson & Farr authorized them to sell, and pay freight, on their account. The suit against them cannot, therefore, be sustained. In view of what has been submitted it is proper to say that the master's position respecting the bills of lading and collection of freight under them—beyond the sum named in the charter—is erroneous. He should have accepted the balance due under the charter, as tendered, and surrendered the bills. That Watson & Farr were the charterers' agents, is clear, and the evidence justifies a conclusion that the master knew it. When he reached the breakwater he took their orders and acted upon them. His subsequent conduct is difficult to understand. As the respondents (for Watson & Farr) have tendered, and now offer to pay into court, the balance due under the charter—$298.87—and both parties desire the business closed with the disposition of this case, a decree may be entered for this sum—$298.87—with costs, to the respondents.